PD-1230-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/4/2015 1:23:18 AM
Accepted 2/6/2015 8:37:45 AM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-1230-14

# *Chad William Murray, Appellant,*
# *v.*
# *State of Texas, Appellee.*

### On Discretionary Review from No. 07-13-00356-CR
### Seventh Court of Appeals, Amarillo

### On Appeal from No. M0187-11
### 66th Judicial District Court, Hill County

# Appellant's Brief

**Michael Mowla**
**445 E. FM 1382 #3-718**
**Cedar Hill, Texas 75104**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

*ORAL ARGUMENT NOT PERMITTED BY THE COURT*

# I. Identity of Parties, Counsel, and Judges

**Chad William Murray**, **Appellant.**

**Michael Mowla, Attorney for Appellant on Discretionary Review**, 445 E. FM 1382 #3-718, Cedar Hill, Texas 75104, phone 972-795-2401, fax 972-692-6636, email michael@mowlalaw.com.

**Mark T. Lassiter, Attorney for Appellant at Trial and on Direct Appeal**, 3500 Maple Avenue Suite 400, Dallas, Texas 75219, phone (214) 845-7007, fax (214) 845-7006, email mark@lassiterlawoffice.com.

**State of Texas, Appellee**.

**David Holmes, Hill County Attorney, Attorney for Appellee,** P.O. Box 253 Hillsboro, TX 76645-2353, phone 254-582-4047, fax 254-582-4013.

**Lisa McMinn, State Prosecuting Attorney, Attorney for Appellee,** P.O. Box 13046, Austin, Texas 78711-3046, phone 512-463-1660, fax 512-463-5724, email Lisa.McMinn@spa.texas.gov.

**John Messinger, Assistant State Prosecuting Attorney, Attorney for Appellee,** P.O. Box 13046, Austin, Texas 78711-3046, phone 512-463-1660, fax 512-463-5724, email john.messinger@spa.state.tx.us.

**Bob McGregor, Jr., Presiding Judge (during trial), 66th Judicial District Court, Hill County**, P.O. Box 284, Hillsboro, Texas 76645-0284, phone 254-582-4045, fax 254-582-4010.

**Lee Harris, Presiding Judge (present), 66th Judicial District Court, Hill County**, P.O. Box 284, Hillsboro, Texas 76645-0284, phone 254-582-4045, fax 254-582-4010.

## II.     Table of Contents

I.      Identity of Parties, Counsel, and Judges.........................................................2

II.     Table of Contents...................................................................................3

III.    Table of Authorities.............................................................................6

IV.     Appendix Index .....................................................................................9

V.      Statement of the Case and Procedural History .............................................10

VI.     Statement Regarding Oral Argument ........................................................12

VII.    Issues Presented ...................................................................................13

VIII.   Facts...................................................................................................14

IX.     Summary of the Arguments....................................................................16

X.      Argument .............................................................................................17

    **1.** Appellant's First Issue: Because the Court of Appeals acquitted Appellant for the DWI conviction, a result that is the "functional equivalent of an acquittal," Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals. ..................................................................................17

        **i.**   Introduction .......................................................................17

        **ii.**  Appellant may raise this issue for the first time before this Court because: (1) of the fundamental nature of double jeopardy protections; and (2) logically Appellant could not have raised this issue in the Court of Appeals since it is the opinion and judgment of the Court of Appeals that acquitted him. ..............................18

        **iii.** The double jeopardy clause of the Fifth Amendment protects Appellant from a retrial on this case, any postacquittal factfinding or other proceeding by any court, or reinstatement of the *Judgment of Conviction by Jury* and sentence because the opinion and judgment of the Court of Appeals is the "functional equivalent of an acquittal." .......................................................18

        **iv.**  Conclusion..........................................................................23

**2.** Response to State's Issue: The State's question for review presumes that a person who is passed out behind the wheel of a running vehicle while parked is "operating" the vehicle. However, this Court should conclude that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* Further, the Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated. ................................................................25

    **i.**      Introduction .................................................................25

    **ii.**     Standard of review for legal sufficiency under the *Jackson v. Virginia* and *Brooks* standard .............................26

    **iii.**    160 years of Supreme Court precedent provides that the law does not presume that Appellant was engaged in criminal activity merely because Appellant was asleep in his vehicle on a cold January night while parked on private property. ...............................................................29

    **iv.**    The opinion of the Court of Appeals is correct because it considered all the evidence presented against Appellant in the light most favorable to the verdict. Further, for purposes of the DWI statutes, the test for "operating" a vehicle should be that *approximately at the same time the person was intoxicated, the person moved or attempted to move the vehicle in a public place.* ...................................31

    **v.**     A review of the rulings from the courts of some other states show that they also generally require that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* ...............................................36

    **vi.**    The Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated. .................................41

    **vii.**   This Court should adopt the proposed definition of "operating" because Texas public policy should favor allowing intoxicated persons to "sleep it off" in their

vehicles if they are unable to safely seek shelter without driving, which clearly is the "lesser of three evils" when compared to: (1) attempting to drive while intoxicated; or (2) exposing themselves to the dangers of the elements or being in the open without the shelter of their vehicles. ......................43

**viii.** Conclusion..................................................................................45

XI. Conclusion and Prayer..................................................................46

XII. Certificate of Service ...................................................................46

XIII. Certificate of Compliance with Tex. Rule App. Proc. 9.4 ...........47

## III. Table of Authorities

### Cases

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011) ............................. 28, 43

*Allen v. State*, 651 S.W.2d 267 (Tex. Crim. App. 1983) .........................................27

*Arizona v. Rumsey*, 467 U.S. 203 (1984) ...............................................................22

*Atkinson v. State*, 627 A.2d 1019 (Md. 1993) ................................................. 37, 38

*Barton v. State*, 882 S.W.2d 456 (Tex. App. Dallas 1994, *no pet.*) ................. 34, 42

*Benavidez v. State*, 323 S.W.3d 179 (Tex. Crim. App. 2010) .................................20

*Benton v. Maryland*, 395 U.S. 784 (1969) .............................................................19

*Boston v. Lecraw*, 58 U.S. 426 (1855) ...................................................................29

*Carrizales v. State*, 414 S.W.3d 737 (Tex. Crim. App. 2013) .......................... 26, 42

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001) .......................................28

*Crist v. Bretz*, 437 U.S. 28 (1978) ........................................................................19

*Delay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014) .......................................29

*Denton v. State*, 911 S.W.2d 388 (Tex. Crim. App. 1995) ................................ 32, 33

*Dornbusch v. State*, 262 S.W.3d 432 (Tex. App. Fort Worth 2008, *no pet.*) ...............................................................................................................41

*Evans v. Michigan*, 133 S.Ct. 1069 (2013) ............................................................21

*Fong Foo v. United States*, 369 U.S. 141 (1962) ...................................................21

*Foster v. State*, 635 S.W.2d 710 (Tex. Crim. App. 1982) .....................................27

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001) ....................................28

*Gonzalez v. State*, 8 S.W.3d 640 (Tex. Crim. App. 2000) .....................................18

*Hearne v. State*, 80 S.W.3d 677 (Tex. App. Houston [1st Dist.] 2002, *no pet.*) ...............................................................................................................42

*Hernandez v. State*, 773 S.W.2d 761 (Tex. App. San Antonio 1989, *no pet.*) ...............................................................................................................42

*Hudson v. United States*, 522 U.S. 93 (1997) ........................................................27

*Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010) ................................. 28, 43

*Jackson v. Virginia*, 443 U.S. 307 (1979) ....................................................... passim

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012) ...................................28

*Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012).................................. 32, 33

*Langs v. State,* 183 S.W.3d 680 (Tex. Crim. App. 2006)....................................19

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) .................... 26, 27, 29, 42

*Martinez v. Illinois*, 134 S.Ct. 2070 (2014) ...................................... 20, 23

*McFarland v. State*, 930 S.W.2d 99 (Tex. Crim. App. 1996) ..............................27

*Moreno v. State*, 294 S.W.3d 594 (Tex. Crim. App. 2009).....................................20

*Murray v. State*, 440 S.W.3d 927 (Tex. App. Amarillo 2014) ........................ passim

*Narvaiz v. State*, 840 S.W.2d 415 (Tex. Crim. App. 1992).....................................27

*North Carolina v. Pearce*, 395 U.S. 711 (1969)...............................................19

*Ortiz v. State*, 577 S.W.2d 246 (Tex. Crim. App. 1979) ........................................27

*Piaskowski v. Bett*, 256 F.3d 687 (7th Cir. 2001) ..............................................22

*Pope v. State*, 802 S.W.2d 418 (Tex. App. Austin 1991, *no pet*.)...........................42

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006) .....................................28

*Prible v. State*, 175 S.W.3d 724 (Tex. Crim. App. 2005)................................. 26, 42

*Reddie v. State*, 736 S.W.2d 923 (Tex. App. San Antonio 1987, *pet. ref.*)............................................................................ 35, 36

*Reynolds v. State*, 744 S.W.2d 156 (Tex. App. Amarillo 1987, *pet. ref.*)...............................................................................41

*Sanabria v. United States*, 437 U.S. 54 (1977)...........................................21

*Serfass v. United States*, 420 U.S. 377 (1975)..............................................20

*Smalis v. Pennsylvania*, 476 U.S. 140 (1986)................................................19

*Smith v. Massachusetts*, 543 U.S. 462 (2005) .......................................... 19, 22

*Sorrells v. State*, 343 S.W.3d 152 (Tex. Crim. App. 2011)......................................28

*State v. Daly*, 313 A.2d 194 (N.J. 1973)..................................................39

*State v. Proctor*, 841 S.W.2d 1 (Tex. Crim. App. 1992) ......................................19

*State v. Zavala*, 666 P.2d 456 (Ariz. 1983)................................................40

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983)................................................................................30

*United States v. Ball*, 163 U.S. 662 (1896)..............................................21

*United States v. Black Lance*, 454 F.3d 922 (8th Cir. 2006) ...............................23

*United States v. Hunt*, 212 F.3d 539 (10th Cir. 2000) ...............................................23

*United States v. Lynch*, 162 F.3d 732 (2d Cir. 1998) ..............................................22

*United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977) ...........................20

*United States v. Scott*, 437 U.S. 82 (1978) ...............................................................22

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)......................................28

*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012).............................. 26, 29, 42

**Statutes**

Md. Transportation Code § 21-902 (1992) .............................................................37

Tex. Code Crim. Proc. Art. 44.25 (2015) ...............................................................27

Tex. Code Crim. Proc. Arts. 1.10 & 1.11 (2015) ...................................................20

Tex. Pen. Code § 49.04 (2011) ............................................................... 11, 32, 42

**Other Authorities**

NHTSA's *2012 Motor Vehicle Crashes: Overview,* http://www-
    nrd.nhtsa.dot.gov/Pubs/811856.pdf ...............................................................43

**Rules**

Tex. Rule App. Proc. 43.2 (2015).................................................................. 23, 27

Tex. Rule App. Proc. 68.11 (2015)........................................................................46

Tex. Rule App. Proc. 68.4 (2015) .........................................................................12

Tex. Rule App. Proc. 9.4 (2015) ...........................................................................47

**Constitutional Provisions**

U.S. Const. Amend. V.................................................................................. 19, 26, 27

U.S. Const. Amend. XIV ............................................................................. 19, 26, 27

**IV. Appendix Index**

**Appendix 1:** Judgment and Opinion of the Court of Appeals in *Murray v. State*, 440 S.W.3d 927 (Tex. App. Amarillo 2014)

**To The Honorable Judges of the Court of Criminal Appeals:**

Appellant Chad William Murray respectfully submits this Brief:

## V. Statement of the Case and Procedural History

This case arises out of the judgment and opinion of the Seventh Court of Appeals in *Murray v. State*, 440 S.W.3d 927 (Tex. App. Amarillo 2014) (*See* Appendix 1), in which the Court of Appeals reversed the *Judgment of Conviction by Jury* and sentence for Driving While Intoxicated imposed on Appellant, and rendered a judgment of acquittal. In its Brief, the State poses the following question to the Court: "Is a driver who is passed out behind the wheel of a running vehicle 'operating' it for the purposes of DWI?" State's Brief, p. 2.

However, as Appellant will show, because the Court of Appeals acquitted Appellant for the DWI conviction, a result that is the "functional equivalent of an acquittal," Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals.

In the alternative, Appellant will show that the State's question for review presumes that a person who is passed out behind the wheel of a running vehicle while parked is "operating" the vehicle. However, Appellant will show that this Court should conclude that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must*

*move or attempt to move the vehicle in a public place.* And as a result, the Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated.

On September 9, 2013, in the 66th Judicial District Court of Hill County, under Cause Number M0187-11, Appellant was convicted by a jury of Driving While Intoxicated, second offense (class A misdemeanor). (CR, 67-68)[1]; *See* Tex. Pen. Code § 49.04 (2011). On the same day, Appellant was sentenced to one year in the county jail, but his sentence was suspended, and he was placed on community supervision for a period of two years. (CR, 67-68).

Appellant appealed the *Judgment of Conviction by Jury* and sentence to the Seventh Court of Appeals. On June 26, 2014, the Court of Appeals reversed the *Judgment of Conviction by Jury* and sentence for Driving While Intoxicated imposed on Appellant, and rendered a judgment of acquittal. *Murray v. State*, 440 S.W.3d 927 (Tex. App. Amarillo 2014).

The State filed a petition for discretionary review, which was granted on November 19, 2014. On December 18, 2014, the State filed its *Brief on the Merits*. Appellant now responds with his Brief.

---

[1] The Clerk's Record, which is comprised of a single volume and a sealed volume, is referenced throughout this Brief as "CR" followed by the page number of the Clerk's Record. The Reporter's Record, which is comprised of three volumes, is referenced throughout this Brief as "RR" followed by the volume number and page number.

## VI. Statement Regarding Oral Argument

In this Court's November 19, 2014 notice in which it granted the State's petition for discretionary review, the Court announced that oral argument will not be permitted. *See* Tex. Rule App. Proc. 68.4(c) (2015). However, should this Court determine that its decisional process will be significantly aided by oral argument, undersigned counsel will be honored to present oral argument.

## VII. Issues Presented

**Appellant's First Issue:** Because the Court of Appeals acquitted Appellant for the DWI conviction, a result that is the "functional equivalent of an acquittal," Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals.

**Response to State's Issue:** The State's question for review presumes that a person who is passed out behind the wheel of a running vehicle while parked is "operating" the vehicle. However, this Court should conclude that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* Further, the Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated.

## VIII.  Facts

The findings of fact by the Court of Appeals are supported by the record on appeal: a Texas trooper found Appellant "alone, reclining, asleep in the seat of his pickup in the cold early hours of a January morning (January 16, 2011)."  (RR2, 6); *Murray*, *Id*. at 928.  The vehicle was parked on a private drive near a fireworks stand with its radio on. *Murray*, *Id*. at 928.  The trooper described the vehicle as "...pulled off the roadway and kind of like in a little driveway. There was a fireworks stand there that had just been broken into a couple of weeks before that, and he was parked in the driveway of that location..."  (RR2, 7).   The trooper clarified his answers as follows when questioned by the State:

> Question: Would that be considered a public place where the vehicle was parked?
>
> Answer: Not in that driveway, it wouldn't. That was private property.

(RR2, 7).   A portion of the vehicle remained on a shoulder adjacent to the roadway, but no part of the vehicle was on the roadway. *Murray*, *Id*. at 928. Although the vehicle's motor was running, its transmission was in "park" mode. *Murray*, *Id*. at 929; (RR2, 8).

There were no containers containing alcoholic substances found in or around the vehicle.  *Murray*, *Id*. at 929.   There was no evidence showing how long Appellant was inside the vehicle.  *Id*. There was no evidence showing how long the vehicle was parked at its location.   *Id*.   There was no evidence even showing

whether Appellant was the one who drove the vehicle to its location. *Id*. The trooper who first encountered and awoke Appellant acknowledged that Appellant was not operating the vehicle in his presence. *Id*. The same trooper also testified that: (1) a sleeping person is not operating a vehicle; and (2) he did not know if Appellant had consumed beer at the scene or elsewhere. *Id*. There was no evidence showing whether Appellant owned or was in some way affiliated with the fireworks stand. *Id*. There was no evidence showing whether Appellant began ingesting alcoholic substances at a location near the fireworks stand. *Id*. Finally, there was no evidence showing whether establishments existed nearby where intoxicating substances could be purchased. *Id*.

## IX. Summary of the Arguments

Appellant will first argue that because the Court of Appeals acquitted Appellant for the DWI conviction, a result that is the "functional equivalent of an acquittal," Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals. As a result, Appellant will ask this Court to affirm the opinion and judgment of the Court of Appeals.

Second, in response to the State's issue, Appellant will argue that the State's question for review presumes that a person who is passed out behind the wheel of a running vehicle while parked is "operating" the vehicle. However, this Court should conclude that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* Thus, the Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated. As a result, Appellant will ask this Court to affirm the opinion and judgment of the Court of Appeals.

## X. Argument

1. <u>**Appellant's First Issue:**</u> **Because the Court of Appeals acquitted Appellant for the DWI conviction, a result that is the "functional equivalent of an acquittal," Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals.**

   ### i. Introduction

   The Court of Appeals acquitted Appellant for the DWI conviction. This is the "functional equivalent of an acquittal." Thus, Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals because any such reversal would presumably reinstate the *Judgment of Conviction by Jury* and sentence after Appellant was acquitted by the Court of Appeals. And even if such reversal does not reinstate the *Judgment of Conviction by Jury* and sentence and instead remands the case back to the Court of Appeals or the trial court, because there would be "postacquittal factfinding proceedings going to guilt or innocence," the double jeopardy clause is still violated.

   As a result, this Court should affirm the opinion and judgment of the Court of Appeals. The State should not get "another shot" at Appellant merely because the State failed to present legally sufficient evidence at trial.

**ii. Appellant may raise this issue for the first time before this Court because: (1) of the fundamental nature of double jeopardy protections; and (2) logically Appellant could not have raised this issue in the Court of Appeals since it is the opinion and judgment of the Court of Appeals that acquitted him.**

Generally, due to the "fundamental nature of double jeopardy protections," an appellant may raise a claim of double jeopardy for the first time on appeal provided that: (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record; and (2) enforcement of the usual rules of procedural default would serve no legitimate state interests. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). In the case before this Court, the record is clear that double jeopardy had already attached when the Court of Appeals reversed the *Judgment of Conviction by Jury* and sentence for Driving While Intoxicated imposed on Appellant, and rendered a judgment of acquittal. Further, procedural default does not apply here because logically Appellant could not have raised this issue in the Court of Appeals since it is the opinion and judgment of the Court of Appeals that acquitted him. And, it is the State that filed for discretionary review, not Appellant. As a result, Appellant properly raises this issue for the first time in this Brief.

**iii. The double jeopardy clause of the Fifth Amendment protects Appellant from a retrial on this case, any postacquittal factfinding or other proceeding by any court, or reinstatement of the *Judgment of Conviction by Jury* and sentence because the opinion**

**and judgment of the Court of Appeals is the "functional equivalent of an acquittal."**

The Fifth Amendment of the United States Constitution provides that no person shall be put in jeopardy of life or liberty twice for the same offense. U.S. Const. Amend. V; *see North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) and *Benton v. Maryland*, 395 U.S. 784, 794 (1969). This protection includes the fundamental requirement that a defendant cannot be subjected to "postacquittal factfinding proceedings going to guilt or innocence." *See Smith v. Massachusetts*, 543 U.S. 462, 467 (2005) and *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986). And, the Fourteenth Amendment's Due Process Clause extends the protections of the Double Jeopardy Clause of the Fifth Amendment to state prosecutions. *See Benton*, 395 U.S. at 794; U.S. Const. Amend. XIV. Finally, there are three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See Langs v. State,* 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

Next, jeopardy attached in Appellant's case when the jury was empanelled and sworn. *See Crist v. Bretz*, 437 U.S. 28, 37-38 (1978); *State v. Proctor*, 841 S.W.2d 1, 4 (Tex. Crim. App. 1992). The protection provided by the double jeopardy clause cannot be invoked unless jeopardy actually attached in a former proceeding, but in Appellant's case, jeopardy attached. *Serfass v. United States*,

420 U.S. 377, 391-394 (1975).

When determining whether an acquittal occurred for the purposes of double jeopardy, a court must examine whether the "acquittal" (regardless of how the "acquittal" is referred to)..."...actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977); *Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010) (A reviewing court may enter a judgment of acquittal if the trial court's ruling amounts to a *de facto* but unacknowledged acquittal, or the reviewing court finds that the evidence is insufficient to support the conviction). In other words, an acquittal occurs if the judgment "...resolved any of the ultimate elements in the defense." *Moreno v. State*, 294 S.W.3d 594, 600 (Tex. Crim. App. 2009); *see also, e.g.*, Tex. Code Crim. Proc. Arts. 1.10 & 1.11 (2015) (Defendant is also protected by these provisions of the Texas Code of Criminal Procedure, which provide that no person shall be put in jeopardy of life or liberty twice for the same offense.).

The Supreme Court of the United States recently addressed double jeopardy and acquittals in *Martinez v. Illinois*, 134 S.Ct. 2070 (2014). Although in Martinez the acquittal was ordered by the trial court, the concept is the same regardless of when a court renders a verdict of acquittal. The Supreme Court found that its "...cases have **defined an acquittal to encompass any ruling that the**

**prosecution's proof is insufficient to establish criminal liability for an offense**." *Id.* at 2076 (emphasis added); *citing Evans v. Michigan*, 133 S.Ct. 1069, 1071 (2013).

The opinion and judgment of the Court of Appeals is clearly a "ruling" that the state's proof was insufficient to establish Appellant's liability for DWI. *See Martinez, Id.* at 2076. The Supreme Court does not differentiate between acquittals that occur at the trial court level or the appellate court level. In other words, regardless of when a court makes a "ruling" that the state's proof was insufficient to establish Appellant's liability, "an acquittal is an acquittal." This concept dates back over 100 years, as in *United States v. Ball*, 163 U.S. 662, 671 (1896), the Supreme Court held,

> "As to the defendant who had been acquitted by the verdict duly returned and received, the court could take no other action than to order his discharge. The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the Constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offence." (internal citations omitted).

Numerous other cases hold the same: retrial or further consideration of the case following any court-decreed acquittal is barred even if the acquittal is "based upon an egregiously erroneous foundation." *See Fong Foo v. United States*, 369 U.S. 141, 143 (1962); *Sanabria v. United States*, 437 U.S. 54, 68-69 (1977) ("That '[a] verdict of acquittal...[may] not be reviewed...without putting [the defendant] twice

in jeopardy, and thereby violating the Constitution,' has....been described as 'the most fundamental rule in the history of double jeopardy jurisprudence.'"); *Smith*, 543 U.S. at 473 (Mistaken understanding of what evidence would suffice to sustain a conviction); *Arizona v. Rumsey*, 467 U.S. 203, 211 (1984) (Reliance on an error of law did not change the double jeopardy effects of the judgment that amounted to an acquittal on the merits).

And as the Supreme Court held in *United States v. Scott*, 437 U.S. 82, 91 (1978), a verdict of acquittal is not the same as a reversal due to procedural rulings, which lead to dismissals or mistrials on a basis unrelated to factual guilt or innocence. Rather, acquittals are **substantive rulings** that conclude proceedings absolutely, and thus implicate double jeopardy. Further, "a verdict of acquittal cannot be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *Id*. at 90.

Many other courts have ruled essentially that "an acquittal is an acquittal." and when any court acquits a defendant, this amounts to the functional equivalent of an acquittal, and the double jeopardy clause of the Fifth Amendment bars a retrial or reconsideration of the case. *See, e.g., Piaskowski v. Bett*, 256 F.3d 687, 694 (7th Cir. 2001) (Double jeopardy bars a retrial because the court's holding that the evidence was insufficient acted as a "functional equivalent of an acquittal."); *United States v. Lynch*, 162 F.3d 732, 735 (2d Cir. 1998) (Double

jeopardy bars the government to appeal an acquittal because government failed to prove facts sufficient to establish element of charge); *United States v. Black Lance*, 454 F.3d 922, 924-925 (8th Cir. 2006) (Double jeopardy bars any further consideration of the case because the trial court's dismissal with prejudice was functional equivalent of acquittal, not a mistrial); *United States v. Hunt*, 212 F.3d 539, 543-544 (10th Cir. 2000) (Double jeopardy bars the government's appeal of an acquittal because government failed to prove facts sufficient to establish elements of charge).

Like in *Martinez* and the other cases cited above, the Court of Appeals clearly made a "ruling" that acquitted Appellant. And like in *Martinez*, the Court of Appeals entered a "textbook acquittal" in Appellant's case, which was "a finding that the State's evidence cannot support a conviction." *Martinez, Id*. at 2076. The Court of Appeals is empowered to do just what it did: to reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered, which is for an acquittal. *See* Tex. Rule App. Proc. 43.2(c) (2015).

### iv. Conclusion

Because the Court of Appeals acquitted Appellant for the DWI conviction, a result that is the "functional equivalent of an acquittal," Appellant's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments would

be violated if this Court reverses the judgment and opinion of the Seventh Court of Appeals. As a result, this Court should affirm the opinion and judgment of the Court of Appeals.

**2. Response to State's Issue:** The State's question for review presumes that a person who is passed out behind the wheel of a running vehicle while parked is "operating" the vehicle. However, this Court should conclude that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* Further, the Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated.

### i. Introduction

Without waiving the arguments above regarding double jeopardy that arise from the acquittal rendered by the Court of Appeals, Appellant argues that the State's question for review of "[I]s a driver who is passed out behind the wheel of a running vehicle 'operating' it for the purposes of DWI?" does not fully address the legal issue in this case. This question presumes that a person who is passed out behind the wheel of a running vehicle while parked is actually operating the vehicle. Appellant argues that this presumption does not consider that in order to "operate" a vehicle for the purpose of the DWI statutes, the precedence and the realities of DWI require that *approximately at the same time the person was intoxicated, the person moved or attempted to move the vehicle in a public place.* Appellant will further argue that for purposes of the DWI statutes, this Court should adopt this as the definition of "operate." By doing so, while giving deference to the precedence on this issue, this Court will eliminate the ambiguity

and confusion surrounding the definition of "operate" or "operating" for purposes of the DWI statutes, and promote good Texas public policy.

### ii. Standard of review for legal sufficiency under the *Jackson v. Virginia* and *Brooks* standard

The Court of Appeals reversed the *Judgment of Conviction by Jury* and sentence for DWI because it found that the evidence presented by the State was not legally sufficient to support a conviction for DWI. When reviewing a claim that the evidence is legally insufficient to support the conviction, an appellate court must determine whether "any *rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (emphasis added), *quoting Jackson v. Virginia*, 443 U.S. 307, 316-319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Prible v. State*, 175 S.W.3d 724, 729-730 (Tex. Crim. App. 2005); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

The Due Process Clauses of the Fifth and Fourteenth Amendments require that a criminal conviction be supported not only by proof beyond a reasonable doubt regarding every essential element of a crime, but that such a determination be made by a *rational* trier of fact. U.S. Const. Amend. V; U.S. Const. Amend. XIV; *Laster*, 275 S.W.3d at 517; *Jackson v. Virginia*, 443 U.S. at 316-319. After

giving "proper deference" (and not total deference) to the trier of fact, an appellate court must "uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 518, *citing Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992); *see Brooks*, *Id.* at 902 n.1.

Although based upon a review of the facts, review of the legal sufficiency of evidence is a determination of law. *Allen v. State*, 651 S.W.2d 267, 269-270 (Tex. Crim. App. 1983). Even if the conviction may be reversed on other grounds, a legal sufficiency review must be conducted when a challenge is raised because a finding that the evidence is legally insufficient to support the conviction prevents a retrial under the Double Jeopardy Clause of the Fifth Amendment. *Hudson v. United States*, 522 U.S. 93, 98-99 (1997); U.S. Const. Amend. V & XIV; *Ortiz v. State*, 577 S.W.2d 246, 250 (Tex. Crim. App. 1979); *Foster v. State*, 635 S.W.2d 710, 717 (Tex. Crim. App. 1982); *McFarland v. State*, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996). Should an appellate court find that the verdict is contrary to the evidence presented at trial, the court is empowered to reverse the conviction and enter a judgment of acquittal. Tex. Code Crim. Proc. Art. 44.25 (2015); Tex. Rule App. Proc. 43.2(c) (2015).

Evidence is legally sufficient only if the state has affirmatively proven each of the essential elements of the offense. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.

Crim. App. 2010); *Jackson*, 443 U.S. at 319; *Adames v. State*, 353 S.W.3d 854, 859-860 (Tex. Crim. App. 2011). When conducting a legal sufficiency review, a reviewing court considers all evidence in the record of the trial, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

The State's case falls short if there is a material variance between the indictment allegations and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). This may occur when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. *Id.*

When performing a legal sufficiency review, a reviewing court does not reevaluate the weight and credibility of the evidence and substitute its judgment for that of the trier of fact. *Isassi*, 330 S.W.3d at 638. Instead, the reviewing court determines whether *the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict*. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (emphasis added). The reviewing court presumes that the trier of fact resolved conflicting

inferences in favor of the verdict and defers to that resolution. *Jackson*, 443 U.S. at 326; *Wise*, 364 S.W.3d at 903.

A reviewing court may also consider whether the trier of fact "got it wrong" because the verdict the trier of fact renders is irrational considering the evidence presented. *See Laster*, 275 S.W.3d at 517 (a legal sufficiency review "is restricted to guarding against the rare occurrence when a factfinder does not act rationally."). As the Court of Criminal Appeals noted, "...sometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law." *Delay v. State*, 443 S.W.3d 909, 912-913 (Tex. Crim. App. 2014).

### iii. 160 years of Supreme Court precedent provides that the law does not presume that Appellant was engaged in criminal activity merely because Appellant was asleep in his vehicle on a cold January night while parked on private property.

About 160 years ago, Justice Robert Grier of the Supreme Court of the United States wrote in *Boston v. Lecraw*, 58 U.S. 426 (1855), that "the law does not presume any (person's) acts to be illegal..." The full relevant part of Justice Grier's holding is as follows:

> "That the law will not presume any man's acts to be illegal, and will therefore attribute to long continued use and enjoyment, by the public, of a right of way or other privilege in or over that lands of another, to a legal rather than an illegal origin; and will ascribe long possession

which cannot otherwise be accounted for, to a legal title: upon a reasonable principle and very forcible presumption, that the acquiescence in such enjoyment, for a long period, by those whose interest it was to interrupt it, arose from the knowledge and consciousness on their part that the enjoyment was rightful, and could not be disturbed; and also on consideration of the hardship which would accrue to parties, if after long possession, and when time had robbed them of the means of proof, their titles were to be subjected to a rigorous examination."

*Id*. at 435. Although Justice Grier's opinion in *Boston v. Lecraw* dealt with a matter involving real property, the concept is the same here: absent evidence that the person is engaged in illegal activity, the law does not presume that the person's acts are illegal.

Further, only the Supreme Court of the United States may overrule one of its precedents, and the Supreme Court has not overruled its holding in *Boston v. Lecraw*. In *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983), the Supreme Court ruled, "...only this Court may overrule one of its precedents." The issue in *Thurston Motor Lines* was that the United States Court of Appeals for the 9th Circuit was unclear whether the holding in a prior Supreme Court case is "...still good law." *Id*. Answering in the positive, the Supreme Court held that until it overrules one of its precedents, any of its prior holdings "…is the law." *Id*.

Therefore, the holding in *Boston v. Lecraw* has not been overruled by the Supreme Court, and Appellant asks this Court of Criminal Appeals to consider that

Appellant had the right to sleep in his vehicle on a cold January night while parked on private property. As the following analysis will show, there was no evidence that would have led any officer to believe that Appellant was engaged in criminal activity.

iv. **The opinion of the Court of Appeals is correct because it considered all the evidence presented against Appellant in the light most favorable to the verdict. Further, for purposes of the DWI statutes, the test for "operating" a vehicle should be that *approximately at the same time the person was intoxicated, the person moved or attempted to move the vehicle in a public place.***

The opinion of the Court of Appeals is correct because it considered all the evidence presented against Appellant in the light most favorable to the verdict, and the Court found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated under Texas Penal Code 49.04. Appellant first points out that when asked whether Appellant was parked in a "public place," the trooper answered, "[N]ot in that driveway....[T]hat was private property." (RR2, 7). A portion of the vehicle remained on a shoulder adjacent to the roadway, but no part of the vehicle was on the roadway. *Murray*, *Id*. at 928. Thus, for this reason alone, Appellant could not have committed Driving While Intoxicated because he **did not operate a vehicle in a public place**.

But even if Appellant was snoozing in his vehicle while pulled over on the side of a public road, the State failed to prove beyond reasonable doubt that

Appellant was "intoxicated while operating a motor vehicle in a public place." *Murray, Id.* at 928; Tex. Pen. Code § 49.04(a) (2011). The issues in this case are whether there is evidence proving beyond a reasonable doubt that: (1) Appellant was "operating" a motor vehicle, (2) in a "public place." The Court of Appeals found that the State failed to prove both of these prongs of § 49.04(a).

In addition to failing to prove that Appellant was parked in a "public place," the State failed to prove beyond a reasonable doubt that Appellant was "operating" a motor vehicle. This Court has held that a person "operates" a vehicle when the totality of the circumstances demonstrate that he "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Murray, Id.* at 928; *citing Kirsch v. State*, 357 S.W.3d 645, 650-651 (Tex. Crim. App. 2012) and *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995). The circumstances must illustrate that the "defendant exerted personal effort upon his vehicle for its intended purpose." *Murray, Id.* at 928; *Denton*, 911 S.W.2d at 389. Stated in a more simple manner for purposes of the DWI statutes, the evidence and circumstances must show that *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.*

In *Kirsch*, the defendant argued before this Court that the court of appeals erred by affirming the trial court's charge to the jury, which included a definition

of the statutorily undefined term "operate" as it is used in Texas Penal Code § 49.04. *Kirsch*, 357 S.W.3d at 647. Because whether the defendant was operating his motorcycle was a question of fact to be resolved by the jury, this Court concluded that the trial court erred by defining "operate," so this Court reversed the judgment of the court of appeals. *Id*. at 652. *Kirsch* does not resolve the question of whether a person who is passed out behind the wheel of a running vehicle while parked 'operating' the vehicle for purposes of DWI. *Kirsch* merely leaves the task of defining "operating" or "operate" in the hands of the trier of fact, and the Court of Appeals in the case before this Court found that the evidence was legally insufficient to show that Appellant was "operating" his vehicle merely because the engine was running while he was asleep inside the vehicle while parked on private property. Still, Kirsch leaves unanswered what it means to "operate" a vehicle.

Nor does *Denton* resolve the issues before this Court. *Denton* was not an appeal of a DWI case, but rather involved a defendant who was convicted for unauthorized use of a motor vehicle because he broke into a vehicle for the purpose of stealing it, only to find that he could not cause the vehicle to move. *Denton*, 911 S.W.2d at 388. This Court rejected the defendant's contention that he did not "operate" the vehicle because it "was never actually moved from a stationary position." *Id*. at 390. Rather, this Court apparently concluded that

because the defendant *attempted to cause the vehicle to move at about the same time he was committing the offense*, he was in fact "operating" the vehicle.

This reasoning appears to be based upon the reasoning of the Dallas Court of Appeals in *Barton v. State*, 882 S.W.2d 456 (Tex. App. Dallas 1994, *no pet.*). In *Barton*, with one foot on the brake and the other foot on the clutch, the defendant was found asleep in his vehicle by a police officer. *Id*. at 457. The engine of the vehicle was idling and the transmission was in neutral. *Id*. The vehicle was stopped partially in an intersection controlled by a flashing yellow light. *Id*. When the officer opened the door, turned off the ignition, and yelled at the defendant, the defendant awoke, and in an attempt to drive away, engaged the clutch, put the gear shift into first and let out the clutch. *Id*. When the defendant realized that the engine was not running, he attempted to start the vehicle. *Id*. The evidence showed that the defendant was intoxicated at the time he attempted to move the vehicle. *Id*.

The Dallas Court of Appeals rejected the contention that in order to "operate" a vehicle within the meaning of § 49.04, the driver's "personal effort must cause the automobile to either move or not move." *Id*. at 459. Instead, the court examines "the totality of the circumstances to determine if [the defendant] exerted personal effort upon his vehicle for its intended purpose." *Id*. In *Barton*, the totality of the circumstances showed that the defendant "took action to affect

the functioning of his vehicle in a manner that would enable the vehicle's use." *Id*. Thus, the facts show that *because the defendant was intoxicated at approximately the same time he moved or attempted to move the vehicle in a public place*, the Dallas Court of Appeals concluded that he was "operating" the vehicle.

In *Denton*, this Court also cites *Reddie v. State*, 736 S.W.2d 923, 925 (Tex. App. San Antonio 1987, *pet. ref.*). *Reddie* further supports Appellant's argument that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* In *Reddie*, several witnesses stated that they saw the defendant slumped over the steering wheel of a vehicle. *Id*. at 924. The motor was idling. *Id*. The vehicle was parked in the middle of the road leading into a new residential subdivision outside city limits. *Id*. No one knew how long the car had been parked in the road. *Id*. Nor did anybody know how long appellant had been sitting in the vehicle or how long he may have been intoxicated. *Id*.

The *Reddie* court reversed the defendant's conviction and entered a judgment of acquittal. *Id*. at 927. The reasons were because: (1) there was no evidence showing how or when the defendant arrived at the scene; (2) there was no evidence that he even drove to the scene (or whether some other person drove him there); (3) there was no evidence showing whether the defendant was intoxicated at the time he arrived at the scene or became intoxicated later; and (4) the gear of the

vehicle was in "park." *Id.* at 925. The facts of *Reddie* closely resemble the facts of the case before this Court because in the case before this Court, (1) there were no containers containing alcoholic substances found around Appellant's vehicle; (2) there was no evidence showing how long Appellant was inside the vehicle; (3) there was no evidence showing how long the vehicle was parked at its location; (4) there was no evidence even showing whether Appellant was the one who drove the vehicle to its location; (5) the transmission of the vehicle was not engaged; (6) even the trooper who first encountered and awoke Appellant acknowledged that Appellant was not operating the vehicle in his presence; and (7) the same trooper admitted that a sleeping person is not "operating" a vehicle. *Murray*, *Id.* at 929. Therefore, like the facts in *Redding*, the facts of Appellant's case show that approximately at the same time Appellant was intoxicated, Appellant did **not** move or attempt to move the vehicle in a public place.

> **v. A review of the rulings from the courts of some other states show that they also generally require that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.***

Ruling of the courts of some other states show that they also generally require that in order to "operate" a vehicle for purposes of the DWI statutes, *approximately at the same time the person is intoxicated, the person must move or attempt to move the vehicle in a public place.* For instance, in *Atkinson v. State,*

627 A.2d 1019 (Md. 1993), the Maryland Court of Appeals held that a person is in actual physical control of a vehicle if the person is presently exercising or is imminently likely to exercise restraining or directing influence over a motor vehicle while in an intoxicated condition; **but** if the person is **totally passive**, has not in any way attempted to actively control the vehicle, and there is no reason to believe that the person is imminently going to control the vehicle in his or her condition, criminal sanctions do **not** apply. (emphasis added).

In *Atkinson*, the defendant was found by an officer slumped over in the driver's seat inside a vehicle parked on the shoulder of a highway. *Id*. at 1021. The keys were in the ignition, and the engine was turned off. *Id*. The officer woke the defendant. *Id*. The officer "detected a strong odor of an alcoholic beverage coming from the vehicle." *Id*. The defendant was arrested, and later convicted of driving while under the influence under Maryland law that prohibits driving while under the influence of alcohol. *See* Md. Transportation Code § 21-902 (1992). The defendant argued that he was not guilty because he did not "drive, operate, [or] move" his vehicle while under the influence. *Atkinson*, *Id*. at 1021.

Although the Maryland Court of Appeals discussed the issue of being in "actual physical control" of a vehicle as a prerequisite of the statute, more pertinent to Appellant's case is that the Maryland Court of Appeals noted that it did not believe that the "legislature meant to forbid those intoxicated individuals who

emerge from a tavern at closing time on a cold winter night from merely entering their vehicles to seek shelter while they sleep off the effects of alcohol." *Id*. at 1025-1026. Further, "...rather than assume that a hazard exists based solely upon the defendant's presence in the vehicle, we believe courts must assess potential danger based upon the circumstances of each case." *Id*. at 1026.

And although the Maryland Court of Appeals reversed the conviction, it also noted that "had there been evidence to establish that Atkinson had driven prior to his apprehension, he might properly have been convicted...not because of what he was doing when the officer arrived on the scene, but because of what the factfinder could have inferred he had done previously, i.e., actually drive, operate, or move his vehicle while intoxicated." *Id*. at 1029. But like Appellant in the case before this Court, as to the defendant in *Atkinson*, (1) there were no containers containing alcoholic substances found around the vehicle; (2) there was no evidence showing how long the defendant was inside the vehicle; (3) there was no evidence showing how long the vehicle was parked at its location; (4) the engine was turned off (the engine in Appellant's case was running but not in gear); and (5) there was no evidence even showing whether defendant was the one who drove the vehicle to its location. Thus, there was no evidence showing that *approximately at the same time* (Atkinson) *was intoxicated,* (Atkinson) *moved or attempted to move the vehicle in a public place*.

In *State v. Daly*, 313 A.2d 194 (N.J. 1973), the defendant was found reclined in the driver's seat of his vehicle, which was parked in the parking lot of a tavern. *Id*. at 195. The motor of the vehicle was running. *Id*. The defendant was not asleep at the time. *Id*. The defendant told the officer he was sitting in the car to keep warm and intended to drive home in a "little while." *Id*. The officer ordered the defendant to step out of the vehicle. *Id*. The officer immediately noticed that the defendant was intoxicated. *Id*. When the officer told the defendant that due to his condition, he could not drive his vehicle, the defendant "uttered a vulgarism and stated, 'I will drive my car when I feel like it.'" *Id*.

The New Jersey Supreme Court affirmed the reversal of the defendant's conviction, finding that there was no evidence that the defendant actually intended to move his vehicle until he sobered up. *Id*. Further, there was no evidence showing exactly how long the defendant had been in the vehicle; and in fact, the evidence showed that the defendant had been in the vehicle for at least one hour and twenty minutes without driving. *Id*.

The New Jersey Supreme Court also rejected the argument that "...intent to move the vehicle should not be a required element of the offense of operating a motor vehicle while intoxicated." *Id*. The State's position was that "an intoxicated person who enters a motor vehicle and starts the engine is a threat to himself and to the public because of the hazard that either he may try to drive the

vehicle, or accidentally cause it to be moved." *Id.* at 195-196. The court disagreed, holding that because the statutory sanction is against "operating" a motor vehicle while intoxicated, that "**...in addition to starting the engine, evidence of intent to drive or move the vehicle at the time must appear**." *Id.* at 196 (emphasis added). Thus, there was no evidence showing that *approximately at the same time* (Daly) *was intoxicated,* (Daly) *moved or attempted to move the vehicle in a public place.*

Finally, in *State v. Zavala*, 666 P.2d 456 (Ariz. 1983), the defendant was found by the police unconscious, hanging partially from the window on the driver's side of the vehicle. *Id.* at 457. The police noticed a strong odor of an alcoholic beverage coming from the defendant and inside the vehicle. *Id.* The key to the ignition was in the "off" position, and the vehicle's motor was not running. *Id.* The relevant issue on appeal was whether the defendant was driving under the influence. In reversing the defendants conviction for driving under the influence, the Supreme Court of Arizona held that "...driving entails **some motion of the vehicle** in which the offender is apprehended." *Id.* at 458. Therefore, like in Appellant's case, in *Zavala*, there was no evidence showing that *approximately at the same time* (Zavala) *was intoxicated,* (Zavala) *moved or attempted to move the vehicle in a public place.*

**vi. The Court of Appeals did not err when it found that the evidence was legally insufficient to prove that Appellant committed Driving While Intoxicated.**

As Appellant argues above, (1) there were no containers containing alcoholic substances found around Appellant's vehicle; (2) there was no evidence showing how long Appellant was inside the vehicle; (3) there was no evidence showing how long the vehicle was parked at its location; (4) there was no evidence even showing whether Appellant was the one who drove the vehicle to its location; (5) the transmission of the vehicle was not engaged; (6) even the trooper who first encountered and awoke Appellant acknowledged that Appellant was not operating the vehicle in his presence; and (7) the same trooper admitted that a sleeping person is not "operating" a vehicle. *Murray*, *Id*. at 929.

Thus, there was no evidence showing that *approximately at the same time* (Appellant) *was intoxicated,* (Appellant) *moved or attempted to move the vehicle in a public place*. The Court of Appeals further contrasted the facts of Appellant's case from dispositive facts in other cases in which convictions were sustained, including the fact that there was no evidence in Appellant's case of the vehicle's transmission being engaged [as opposed to in *Dornbusch v. State*, 262 S.W.3d 432 (Tex. App. Fort Worth 2008, *no pet*.)]; no admission by Appellant that he had been driving the vehicle [as opposed to in *Reynolds v. State*, 744 S.W.2d 156 (Tex. App. Amarillo 1987, *pet. ref*.)]; Appellant's vehicle was not running while in the

roadway [as opposed to in *Pope v. State*, 802 S.W.2d 418 (Tex. App. Austin 1991, *no pet.*)]; Appellant's vehicle was not in a moving lane of traffic [as opposed to in *Hearne v. State*, 80 S.W.3d 677 (Tex. App. Houston [1st Dist.] 2002, *no pet.*)]; and there was no evidence that Appellant attempted to manipulate the vehicle's controls (steering wheel, gear lever, brakes, or accelerator) [as opposed to in *Barton* or *Hernandez v. State*, 773 S.W.2d 761 (Tex. App. San Antonio 1989, *no pet.*)]. As the Court of Appeals further concluded, each of the cases it listed had "more indicia" allowing a trier of fact to reasonably infer that the defendant "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use or that the defendant exerted personal effort upon his vehicle for its intended purpose." *Id*. at 929.

As a result, there was no direct or circumstantial evidence that would allow a reasonable trier of fact to infer that in violation of Texas Penal Code § 49.04(a), Appellant operated his vehicle while intoxicated because approximately at the time Appellant was intoxicated, Appellant did not move or attempt to move the vehicle in a public place. And, **no** *rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Laster*, 275 S.W.3d at 517, *Jackson*, 443 U.S. at 316-319; *Brooks*, 323 S.W.3d at 912; *Prible*, 175 S.W.3d at 729-730; *Wise*, 364 S.W.3d at 903; *Carrizales*, 414 S.W.3d at 742. Further, after giving "proper deference" (and not total deference) to the trier of fact, the Court of

Appeals correctly concluded that the State failed to affirmatively prove each of the essential elements of Driving While Intoxicated. *Isassi*, 330 S.W.3d at 638; *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 859-860.

> **vii.     This Court should adopt the proposed definition of "operating" because Texas public policy should favor allowing intoxicated persons to "sleep it off" in their vehicles if they are unable to safely seek shelter without driving, which clearly is the "lesser of three evils" when compared to: (1) attempting to drive while intoxicated; or (2) exposing themselves to the dangers of the elements or being in the open without the shelter of their vehicles.**

As a preface to this argument, undersigned counsel agrees and understands that: (1) driving while intoxicated is dangerous, (2) driving while intoxicated causes significant safety concerns, and (3) many people are injured or killed as a result of driving while intoxicated. According to the National Highway Traffic Safety Administration ("NHTSA"), during 2012, out of the 33,561 people who died in motor vehicle traffic accidents in the United States, alcohol-impaired-driving fatalities increased accounted for 31 percent of the fatalities. *See* NHTSA's *2012 Motor Vehicle Crashes: Overview*, http://www-nrd.nhtsa.dot.gov/Pubs/811856.pdf, last accessed on February 3, 2015. In Texas during the same year (2012), out of 3,398 traffic fatalities, 1,296, or 38 percent involved impaired driving. *Id*. Thus, the seriousness of the problem of impaired driving is not lost on undersigned counsel, and undersigned counsel agrees and

understands that the **best public policy is that persons should not drive at all while intoxicated.**

However, Texas public policy should also favor allowing intoxicated persons to "sleep it off" in their vehicles if they are unable to safely seek shelter without driving, which clearly is the "lesser of three evils" when compared to: (1) attempting to drive while intoxicated, or (2) exposing themselves to the dangers of the elements or being in the open without the shelter of their vehicles. Logically, if an impaired person realizes that he or she should not be driving, it is best for all concerned that the impaired person immediately stop driving and seek shelter until the effects of the intoxicants wear off. But if there is no shelter immediately available, upon stopping the vehicle, the impaired person may either: (1) exit the vehicle and risk exposure to the elements or risk being accosted by bandits; or (2) remain in the relative safety of the vehicle, and stay warm (during the winter) until the effects of the intoxicants wear off. No rational person (or rational impaired person) would rather exit the vehicle and risk freezing to death or risk coming upon bandits merely to avoid a DWI arrest. Nor should the rational person (or rational impaired person) do so.

But if this Court where to adopt Appellant's proposed definition of "operating," the impaired person would **not** have to choose between the equally unappealing choices of: (1) risking arrest for DWI merely because the person is

"sleeping it off" in a vehicle; or (2) risking arrest for DWI and putting his or her life and the lives of those on the road in danger by attempting to drive home or to nearby shelter. Obviously if the impaired person was not impaired to begin with, the person would not have to choose between these alternatives. This conclusion is understand and obvious. However, this Court is well-aware of the realities of DWI, as persons from all walks of life have made the crucial error of driving while impaired. And, public policy supports the conclusion that allowing intoxicated persons to "sleep it off" in their vehicles if they are unable to safely seek shelter without driving is the "lesser of three evils" compared to: (1) attempting to drive while intoxicated; or (2) risking the elements or worse without the shelter of their vehicles.

### viii.    Conclusion

The State's question for review presumes that a person who is passed out behind the wheel of a running vehicle while parked is "operating" the vehicle. This question presumes that such a person is actually operating the vehicle, but this presumption does not consider that in order to "operate" a vehicle for the purpose of the DWI statutes, the precedence and the realities of DWI require that *approximately at the same time the person was intoxicated, the person move or attempt to move the vehicle in a public place.* As a result, Appellant asks that this Court affirm the judgment of the Court of Appeals.

## XI. Conclusion and Prayer

For the reasons stated in this Brief, Appellant respectfully prays that this Court affirm the opinion and judgment of the Seventh Court of Appeals, which reversed the *Judgment of Conviction by Jury* and sentence imposed on Appellant, and rendered a judgment of acquittal.

Respectfully submitted,

Michael Mowla
445 E. FM 1382 #3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
By: Michael Mowla

## XII. Certificate of Service

This certifies that on February 4, 2015, a true and correct copy of this document was served on David Holmes, District Attorney, Hill County, by email to dholmes@co.hill.tx.us, on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov and information@spa.texas.gov, and John Messinger, john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015)

**/s/ Michael Mowla**
By: Michael Mowla

## XIII. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 15,000 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 7,836 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

# APPENDIX 1

# *Murray v. State*

Court of Appeals of Texas, Seventh District, Amarillo

June 26, 2014, Decided

No. *07-13-00356-CR*

**Reporter**

440 S.W.3d 927; 2014 Tex. App. LEXIS 7023; 2014 WL 2916878

CHAD WILLIAM MURRAY, APPELLANT v. THE STATE OF TEXAS, APPELLEE

**Notice:** PUBLISH.

**Subsequent History:** Rehearing overruled by *Murray v. State, 2014 Tex. App. LEXIS 8881 (Tex. App. Amarillo, Aug. 12, 2014)*

Petition for discretionary review granted by *Murray, 2014 Tex. Crim. App. LEXIS 1824 (Tex. Crim. App., Nov. 19, 2014)*

**Prior History:** **[**1]** On Appeal from the 66th District Court, Hill County, Texas. Trial Court No. M0187-11, Honorable F. B. (Bob) McGregor Jr., Presiding.

## Core Terms

pet, operation of a vehicle, intoxicated, substances, vehicle's, alcohol, roadway, circumstantial evidence, fireworks, asleep, infer, driving while intoxicated, reversing judgment, judgment rendered, intended purpose, private driveway, reasonable doubt, direct evidence, personal effort, steering wheel, fact finder, circumstances, transmission, functioning, unmentioned, Appeals, exerted, locale, parked, truck

## Case Summary

### Overview

HOLDINGS: [1]-No direct or circumstantial evidence appeared of record enabling a reasonable factfinder to infer that defendant operated his vehicle while intoxicated, in violation of *Tex. Penal Code Ann. § 49.04(a)* (Supp. 2013), because he was simply found asleep in a running truck while parked off the roadway and mainly in a private driveway; while the vehicle's motor was running, its transmission was not engaged, and no signs of containers holding alcoholic substances were found around the vehicle.

### Outcome

Judgment reversed; judgment of acquittal rendered.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Evidence > Admissibility > Circumstantial & Direct Evidence

*HN1* A legal sufficiency review requires an appellate court to view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Direct evidence is not necessary for circumstantial evidence can be as probative as direct evidence in establishing the guilt of the actor. Indeed, circumstantial evidence alone may be sufficient.

Criminal Law & Procedure > ... > Vehicular Crimes > Driving Under the Influence > Elements

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

*HN2* To convict a defendant of driving while intoxicated, the State is obligated to show, beyond reasonable doubt, that the defendant was intoxicated while operating a motor vehicle in a public place. *Tex. Penal Code Ann. § 49.04(a)* (Supp. 2013). One is intoxicated when he lacks the normal use of his mental or physical faculties by reason of the introduction of alcohol, among other substances, into his body or when having a blood alcohol concentration of 0.08 or more. *Tex. Penal Code Ann. § 49.01(2)*. And, though statute does not define the term "operate," the Texas Court of Criminal Appeals holds that a person operates a vehicle when the totality of the circumstances demonstrate that he took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use. In other words, the circumstances must illustrate that the defendant exerted personal effort upon his vehicle for its intended purpose.

**Judges:** Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**Opinion by:** Brian Quinn

## Opinion

 [*928]  Chad William Murray appeals his conviction for driving while intoxicated. He raises four issues, but we address only one for it is dispositive.[1] That issue involves the sufficiency of the evidence to support his conviction. We find the evidence legally insufficient, reverse the judgment, and render judgment of acquittal.

The pertinent standard of review was most recently explained in *Carrizales v. State, 414 S.W.3d 737 (Tex. Crim. App. 2013)*. *HN1* It requires the court to view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id. at 742*. Direct evidence is not necessary for circumstantial evidence can be as probative as direct evidence in establishing the guilt of the actor. *Id*. Indeed, circumstantial evidence alone may be sufficient. *Id*.

---

[1]  The State did not favor us with a brief addressing any issue raised by appellant.

As previously mentioned, the State convicted appellant [**2] of driving while intoxicated under *section 49.04 of the Texas Penal Code*. Thus, **HN2** it was obligated to have shown, beyond reasonable doubt, that appellant was "intoxicated while operating a motor vehicle in a public place." *TEX. PENAL CODE ANN. § 49.04(a)* (West Supp. 2013).

One is intoxicated when he lacks the normal use of his mental or physical faculties by reason of the introduction of alcohol, among other substances, into his body or when having a blood alcohol concentration of 0.08 or more. *Id. § 49.01(2)*. And, though statute does not define the term "operate," our Court of Criminal Appeals has held that a person operates a vehicle when the totality of the circumstances demonstrate that he "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Kirsch v. State, 357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012)*; *Denton v. State, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995), quoting Barton v. State, 882 S.W.2d 456 (Tex. App.—Dallas 1994, no pet.)*. In other words, the circumstances must illustrate that the "defendant exerted personal effort upon his vehicle for its intended purpose." *Denton v. State, 911 S.W.2d at 389*, *quoting Barton v. State, supra.* [**3] Appellant contends that the State failed to prove he was operating the vehicle as contemplated by the statute.

The record illustrates that Texas troopers found appellant alone, reclining, asleep in the seat of his pickup in the cold early hours of a January morning. The vehicle was parked on a private drive near a fireworks stand with its radio on. Though a portion of the vehicle remained on a shoulder adjacent to the roadway, none was on the roadway. Furthermore, while its motor [*929] was running, its transmission was not engaged; that is, it was in park. No signs of containers holding alcoholic substances were found around the vehicle. How long appellant and his vehicle were at the locale went unmentioned, as did the time at which he arrived there. Moreover, the trooper who first encountered and then awoke appellant acknowledged that appellant was not operating the vehicle in his presence. The same trooper also testified both that a sleeping person is not operating a vehicle and that he did not know if appellant had consumed beer at the scene or elsewhere.

Whether appellant owned or was in some way affiliated with the fireworks stand also went unmentioned. Whether he began ingesting alcoholic [**4] substances at a locale near the fireworks stand went undeveloped, as did whether establishments existed nearby whereat intoxicating substances could be acquired.

We do not have evidence of the vehicle's transmission being engaged, as in *Dornbusch v. State, 262 S.W.3d 432 (Tex. App.—Fort Worth 2008, no pet.)*.[2] Nor did appellant here inform the officers that he had been driving the car, as in *Reynolds v. State*, 744 S.W.2d 156 (Tex. App.—Amarillo 1987, pet. ref'd). Nor was the vehicle running while actually on the roadway, as in *Barton v. State, supra* and *Pope v. State, 802 S.W.2d 418 (Tex. App.—Austin 1991, no pet.)* and *Hernandez v. State, 773 S.W.2d 761 (Tex. App.—San Antonio 1989, no pet.)*. Nor was the vehicle found running in a moving lane of traffic, as in *Hearne v. State, 80 S.W.3d 677 (Tex. App.—Houston [1st Dist.] 2002, no pet.)*. Nor is there evidence that appellant attempted to manipulate the vehicle's controls, like the steering wheel, gear lever, brakes, or accelerator, as in *Barton v. State, supra*, or *Hernandez v. State, supra.* Each of those prosecutions may have involved someone finding someone awake or asleep behind a steering wheel

---

[2] Indeed, that the car was in gear was the determinative factor according to the justice who concurred in *Dornbusch. Dornbusch v. State, 262 S.W.3d 432, 438-39 (Tex. App.—Fort Worth 2008, no pet.)* (concurring).

of an idling car. Yet, each had more indicia [**5] allowing a fact finder to reasonably infer that the accused took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use or that the defendant exerted personal effort upon his vehicle for its intended purpose. Here, however, appellant was simply found asleep in a running truck while parked off the roadway and mainly in a private driveway. And, while one can infer that someone had to have driven the truck there, we have no evidence as to when or whether the person was inebriated at the time.

Simply put, no direct or circumstantial evidence appears of record enabling a reasonable fact finder to infer that appellant operated his vehicle while intoxicated. We reverse the judgment and render judgment acquitting appellant of the offense.

Brian Quinn

Chief Justice

Publish.