STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN A. DALY, DEFENDANT-RESPONDENT.

Argued November 20, 1973—Decided December 19, 1973.

*Mr. Marc J. Friedman,* Deputy Attorney General, argued the cause for plaintiff (*Mr. George F. Kugler,* Attorney General of New Jersey, attorney).

*Mr. Edward L. Keefe* argued the cause for defendant.

The opinion of the Court was delivered by

SULLIVAN, J. Defendant was arrested on a charge of operating a motor vehicle while under the .influence of intox-

icating liquor, a violation of *N. J. S. A.* 39:4–50(a). He was convicted of the charge in the municipal court, appealed to the county court, was tried *de novo* in that court and was again found guilty. He took an appeal to the Appellate Division which, in an opinion with one judge dissenting, 126 *N. J. Super.* 313, reversed his conviction on the ground that defendant was not shown to have been "operating" his motor vehicle within the meaning of the statute. The State appeals as of right. *R.* 2:2–1(a).

Defendant was arrested on February 15, 1972 at 3:20 A.M. while sitting in his car which was parked in the parking lot of a tavern. According to the arresting officer, the lights of the car were off, but the motor was running. Defendant was sitting in the driver's seat which was slightly reclined[1] and "looked up" as the officer shined a light into the car. The officer testified that defendant was not asleep at the time. Defendant told the officer he was sitting in the car to keep warm and intended to drive home in a little while. The officer had defendant step out of the car and immediately noted he was intoxicated. He told defendant that due to his condition he could not drive his vehicle. Whereupon, defendant uttered a vulgarism and stated: "I will drive my car when I feel like it." The officer then placed defendant under arrest.

At the trial *de novo* defendant's intoxication was conceded. Defendant testified that he had been drinking in the tavern and left between twelve and twelve-thirty in the early morning. He said he realized he had too much to drink and decided to "sleep it off." To this end he got into his car, reclined the driver's seat and fell asleep. He was awakened a few times by the cold and started the engine to get some heat in the car. He was sound asleep when the officer rapped on the car window and shined a light into the car. He said that he told the officer he had no intention of

---

[1]The seats on this particular make of car were reclinable.

driving, but he was arrested anyway and taken to the police barracks.

■ We agree with the Appellate Division holding that defendant was not shown to be "operating" his motor vehicle within the meaning of the statute. In *State v. Sweeney,* 40 *N. J.* 359 (1963), defendant, in a state of intoxication, was found sitting in the driver's seat of his car which was parked at the curb with the motor running. There we held defendant could be convicted of "operating" his car if there was evidence in the case from which the trial court could clearly infer that defendant intended to move the vehicle.

In the instant case, defendant denied any intent to move or drive his car until he had sobered up and, contrary to the State's contention, there was no evidence from which any such intent could be inferred beyond a reasonable doubt. The tavern, concededly, was required to close at 2:00 A.M. and there was no proof that it did not. Defendant had, thus, been in his car for at least one hour and twenty minutes without driving when come upon by the police.

■ In the alternative, the State argues that intent to move the vehicle should not be a required element of the offense of operating a motor vehicle while intoxicated. The State's position is that an intoxicated person who enters a motor vehicle and starts the engine is a threat to himself and to the public because of the hazard that either he may try to drive the vehicle, or accidentally cause it to be moved.

We recognize that there is a risk involved. However, the statutory sanction is against "operating" a motor vehicle while intoxicated. We conclude, as we did in *Sweeney,* that in addition to starting the engine, evidence of intent to drive or move the vehicle at the time must appear.

Affirmed.

CLIFFORD, J., (concurring). I am in agreement with the result achieved by my colleagues but do not subscribe to the theory upon which the decision is based. It springs from the majority opinion in *State v. Sweeney,* 40 *N. J.* 359

(1963), which held defendant could be convicted of "operating" his automobile if there was evidence from which the trial court could clearly infer that defendant intended to move the vehicle. I believe this amounts to a distortion of the meaning of "operate" and results in an unwarranted extension of *N. J. S. A.* 39 :4–50 (a) so as significantly to erode the requirements for conviction under this *quasi*-criminal legislative enactment.

Justice Francis's dissenting opinion in *Sweeney* properly interprets "operate" for purposes of this statute. He believed, as I do, that the act should be construed strictly in view of its penal character. His opinion contains a painstaking review of the legislative history, not undertaken or even adverted to in any of the other opinions in either the Appellate Division or this Court in the instant case or *Sweeney*. A tracing of that history leads to the ineluctable conclusion that an automobile is not being operated within the contemplation of the statute unless it is in motion on the roadway.

If the legislature wanted to create an offense of such broad boundaries as set out by the majorities in *Sweeney* and this case, then it could easily have said so in clear and unmistakable terms. While I am constrained to observe that the social policy implicit in the Court's opinion strikes me as a wholesome and salutary one, I do not join in today's judicial reapproval thereof because it is not in keeping with my reading of the legislative intent.

There is something uncannily prophetic about Justice Francis's apprehension of the effect of *Sweeney,* for he said:

"Under my colleagues' view if an intoxicated person gets into an automobile, sits in the driver's seat and starts the motor, he is guilty of operating the vehicle while under the influence of intoxicating liquor. The mere act of making the motor run, even though the brake remains on and the gear shift in park position, is sufficient to convict. Thus, *a person under the influence, who starts the motor to take advantage of the heater on a cold night,* or perhaps to use the radio without running down the battery, while he waits for the appearance of someone else, *or perhaps while he waits to recover his*

*sobriety,* or for other conceivable reasons, *may be found guilty of operating the car.* Such suggestions can be made the butt of much caustic or sardonic humor, but just as the public deserves protection against the drunken driver, no individual should be convicted as such a driver or operator unless he fits the description established by the Legislature." 40 *N. J.* at 363 (emphasis supplied).

\* \* \* \* \* \* \* \*

[I]t seems to me, on the whole record of the statute under consideration, that the legislative intent was to ban driving on the roadways of the State while under the influence of intoxicating liquor. A stationary vehicle is not being operated in the sense required for conviction; *nor was the purpose of the act to make proof of an unexecuted intent to drive (operate) sufficient to convict of the offense specified therein."* 40 *N. J.* at 367 (emphasis supplied).

I would not let the result in the case *sub judice* turn on a determination as to whether the *Sweeney* test has been satisfied, particularly on an interpretation of the record below as to Daly's "intent." While he may have demonstrated an obvious need for a lesson in manners, civilized discourse, or, at the very least, diplomacy in dealing with a law enforcement official, he was not "operating" or "driving" his automobile inasmuch as it was not in motion, irrespective of his intent. Accordingly, I vote to affirm the Appellate Division's reversal of the judgment of conviction.

I am authorized to indicate that PASHMAN, J., joins in this opinion.

HALL, J., and COLLESTER, P. J. A. D., Temporarily Assigned, dissenting, would reverse the judgment of the Appellate Division and reinstate the conviction for the reason given by Judge Kolovsky in his dissenting opinion in the Appellate Division, *viz.,* that there was ample credible evidence in the record to support the trial court's finding that defendant had the "intent to move the vehicle," and so was "operating" it within the rationale of *State v. Sweeney,* 40 *N. J.* 359 (1963), and that there is no sound reason for an appellate tribunal to upset that determination.

128

PASHMAN and CLIFFORD, J.J., concur in the result.

*For affirmance*—Acting Chief Justice JACOBS, Justices SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—5.

*For reversal*—Justice HALL and Judge COLLESTER—2.